IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 12, 2000 Session

## STATE OF TENNESSEE v. JERRY WAYNE ELLIOTT

**Direct Appeal from the Circuit Court for Henderson County**
**No. 98-170     Franklin Murchison, Judge**

_____

**No. W1999-00361-CCA-R3-CD - Filed January 5, 2001**

_____

The Defendant, Jerry Wayne Elliott, pled guilty to three counts of aggravated assault, reserving his right to appeal a certified question of law, pursuant to Tenn. R. Crim. P. 37(b)(2)(i). Defendant had filed a Motion to Suppress evidence obtained from an allegedly unconstitutional search and seizure of Defendant, which the trial court denied following an evidentiary hearing. The denial of this Motion to Suppress is the basis of the certified question of law. After review of the record and the briefs we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID G. HAYES, J., joined.

George Morton Googe, District Public Defender; Michael D. Rasnake, Assistant Public Defender, Jackson, Tennessee, for the appellant, Jerry Wayne Elliott.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Jerry Woodall, District Attorney General; William R. Martin, Assistant District Attorney General, for the appellee, State of Tennessee

**OPINION**

FACTS

On June 18, 1998, law enforcement officers of the Henderson County Sheriff's Department received information that Defendant had been involved in a drive-by shooting. A few hours after receiving this information, and during the late hours of the night, six officers in three vehicles (two marked cars and one unmarked car) went to the trailer where Defendant resided to attempt to question Defendant about the earlier drive-by shooting.

According to the testimony of Investigator Barry Edgin, the officers surrounded the perimeter of Defendant's trailer before announcing their presence to the Defendant. The officers used this procedure because they were involved in investigating a shooting incident, and Defendant had a history of violent behavior. Several times, Officer Michael Vance used the loud speaker in one patrol car to request that the Defendant come out and speak with the officers. The Defendant did not respond. A police dispatcher called Defendant and advised him to go to the door to talk with the police officers. Defendant looked out a window, told the dispatcher that no one was there, and if they were, they needed a warrant to talk to him because they were trespassing. He hung up on the dispatcher, who immediately called back, and again advised the Defendant to talk to the officers. Defendant hung up again.

Investigator Edgin watched Defendant through a window. Defendant obtained a shotgun, loaded it and went to one of the doors and conversed with the officers--basically telling them to leave. Edgin stated that Defendant came outside about 15 feet, leveled the shotgun and fired at least three times in the direction of at least three officers. Defendant disputed this, but admitted to opening a door and firing three times up in the air.

After the officers began returning fire "from both sides of the trailer," Defendant turned off the outside lights and called 911 to request officers to help him. He realized that the woman who answered his call was the same person who had earlier called his trailer, advising him to talk to the police officers. She ultimately talked Defendant into surrendering to the officers, who arrested him for shooting at them.

ANALYSIS

Relying principally upon United States v. Morgan, 743 F.2d 1158 (6th Cir. 1984), Defendant asserted in the trial court that the court should suppress the following evidence and prevent the State from using it against him in the aggravated assault charges:

> Your Honor, it was an illegal arrest. Anything after that point of illegal arrest, in his home without a warrant, had to be suppressible. It could be the gun, it could be the shells, any statements he may have made, if he made any, anything that happened after the point the police arrived on his property and arrested him. An illegal arrest in his home, without a warrant, would have to be suppressed and not be able to put before a jury.

It is Defendant's contention that when the officers surrounded his home with guns drawn, used the loudspeaker to summon him out, and had the dispatcher call him twice to encourage him to go outside, he was in effect arrested and seized without a warrant. It is undisputed that the law enforcement officers did not have an arrest warrant or search warrant when they went to the Defendant's home.

-2-

In Morgan, law enforcement officers went to the defendant's mother's home, without any warrant, to arrest the defendant and search the home for illegal firearms. The officers surrounded the home and an officer summoned Morgan to the door with a bullhorn and told Morgan to put down his weapon. After the officer repeated the order, Morgan put down the gun, went outside and was "arrested, handcuffed and frisked."

The Sixth Circuit Court of Appeals affirmed the district court's suppression of the weapon possessed by Morgan, which had led to his criminal charges. The Court of Appeals held that the officer's coercive activity was in effect a warrantless arrest inside the defendant's home and without exigent circumstances, quoting from Payton v. New York, 445 U.S. 573, 590, 100 S. Ct. 1371, 1382, 63 L. Ed. 2d 639 (1980):

> In terms that apply equally to seizures of property and to seizures of the person, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not be reasonably crossed without a warrant.

Morgan, 743 F.2d at 1161.

An important distinction between Morgan and the case sub judice, is that the crime, for which Morgan was being prosecuted and for which evidence was suppressed, was being committed at the time of the unconstitutional "seizure" of Morgan. In Defendant's case, however, the crimes which led to these charges occurred after the officers arrived at the Defendant's home. Thus, we do not have to determine whether or not the Henderson County Sheriff's Department Officers made a warrantless arrest of Defendant, which violated provisions of the Fourth Amendment as set forth in Payton v. New York.

Assuming arguendo, that the officers did make an illegal arrest of Defendant, at the time they surrounded his home, we hold that evidence of Defendant's criminal conduct committed subsequent to an illegal arrest, or even as a result thereof, should not be suppressible under the exclusionary rule. Our Court has previously addressed this issue in dicta in State v. George Wesley Harville, Jr., No. 01C01-9607-CC-00300, 1997 WL 661726 at * 3, Sequatchie County (Tenn. Crim. App., Nashville, Oct. 24, 1997), wherein we stated:

> [T]he fact there was an illegal stop or arrest does not warrant the total exclusion of what takes place after the illegal stop or arrest. This is particularly true of crimes committed subsequent to the illegal stop or arrest. Such conduct is not obtained as a result of the exploitation of the illegal stop or arrest.

Harville, slip op. at *3 (citations omitted).

Furthermore, we are persuaded by the reasoning of the Fourth Circuit Court of Appeals in United States v. Sprinkle, 106 F.3d 613 (4th Cir. 1997). In Sprinkle, the defendant was a passenger in a vehicle, which had been stopped by Charleston, South Carolina police officers. Sprinkle ran from the vehicle and was chased by one of the officers. During the chase, Sprinkle fired one shot at the officer, but was ultimately apprehended, in possession of the handgun. He was indicted by a federal grand jury for possessing a firearm after conviction for a felony in violation of 18 U.S.C. § 922(g)(1). Sprinkle filed a motion to suppress the gun as evidence, claiming the gun was the fruit of an unlawful stop. The District Court granted the Motion to Suppress. The Court of Appeals reversed.

In doing so, the federal appellate court agreed that the initial stop and seizure of Sprinkle were constitutionally unjustified. However, the Court of Appeals further held that Sprinkle's own illegal acts, after the initial stop, triggered an exception to the "fruit of the poisonous tree" doctrine. The Fourth Circuit held,

> If a suspect's response to an illegal stop "is itself a new, distinct crime, then the police constitutionally may arrest the [suspect] for that crime." United States v. Bailey, 691 F.2d 1009, 1017 (11th Cir. 1982). [citations omitted] There is a strong policy reason for holding that a new and distinct crime, even if triggered by an illegal stop, is a sufficient intervening event to provide independent grounds for arrest. Id. As the Bailey court recognized, "[a] contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." Id. Because the arrest for the new, distinct crime is lawful, evidence seized in a search incident to that lawful arrest is admissible. See id. at 1018.

Sprinkle, 106 F.3d at 619.

The Sprinkle Court applied the applicable law to the facts in that case as follows:

> In this case, Sprinkle fled when Officer Riccio began the patdown. Sprinkle pulled his .357 Magnum as Officer Riccio chased him. After Riccio had pursued Sprinkle about two blocks, Sprinkle took a shot at Riccio. When Sprinkle drew and fired his gun at the officer, he committed a new crime that was distinct from any crime he might have been suspected of at the time of the initial stop. See S.C. Code Ann. § 16-23-410 (Law. Co-op. Supp. 1995) ("It is unlawful for a person to present or point at another person a loaded or unloaded firearm."). At this point, Officer Riccio had probable cause to arrest Sprinkle because the new crime purged the taint of

-4-

the prior illegal stop.  And the gun, which was in plain view at the
scene of the new crime, could be legitimately seized.

Sprinkle, 106 F.3d at 619-20.

United States v. Sprinkle is squarely on point with the facts in the case sub judice.
Defendant committed new and distinct criminal acts after the Henderson County officers arrived
at this home.  The officers therefore had the necessary probable cause to arrest Defendant and seize
evidence in a search incident to that lawful arrest.  However, in Payton v. New York, the United
States Supreme Court held that police officers may not enter a suspect's home to make a warrantless
arrest, even if the arrest is based on probable cause, unless there are exigent circumstances excusing
the necessity of a warrant.  Payton, 445 U.S. at 590, 100 S. Ct. at 1382.  Here, the Defendant fired
shots at the officers, making it necessary for the officers to immediately apprehend the Defendant.
So, given that the officers considered the Defendant armed and dangerous and the arrest occurred
in close proximity to the offenses charged, exigent circumstances were present.  See State v.
Beasley, 699 S.W.2d 565, 568 (Tenn. Crim. App. 1985).  Thus, the officers' warrantless arrest of
Defendant and seizure of Defendant's gun and any other evidence were lawful. The trial court was
correct in denying the motion to suppress.  Accordingly, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE